FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 15 2020
BROOKLYN OFFICE

Received by the Pro Se Office
9/15/2020- KC

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

CHRISTOPHER McKIE,

    Plaintiff,

vs.

Civil Action
Case Number: 20-cv-2973

THE ESTATE OF DORIS DICKINSON, *et al.*,

    Defendants.

/

# PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPTEMBER 14, 2020 LETTER TO THE HONORABLE KIYO A. MATSUMOTO

## I. INTRODUCTION

On September 14, 2020, the Defendants, by and through their attorney, William V. DeCandido, submitted a motion/letter to the Honorable Kiyo A. Matsumoto, requesting a pre-motion conference for permission to file a motion to dismiss Plaintiff's complaint. (ECF No. 10). After the September 14, 2020 letter was filed, it was also construed as Defendants' first motion to dismiss by the Court. Id. Hence Plaintiff's reason for referring to the letter as a motion.

In a separate order issued on the same day, the Court ordered Plaintiff's to submit a response to Defendants' pre-motion conference request on or before September 21, 2020.

In compliance with the Court's order, Plaintiff now submits his response.

1

## II. PRELIMINARY STATEMENT

As an initial matter, in consideration of Defendant Charles Kornegay's repeated attempts to avoid litigation by electing to persuade the Court to dismiss this case *not because* he (Mr. Kornegay) has demonstrated that Plaintiff's claims against him and his wife are patently frivolous and insubstantial and that Plaintiff will not be able to prove any of the factual allegations put forth in support of his claims, but *solely because* he (Mr. Kornegay) was rightfully appointed Administrator of the estate of Doris Dickinson and Plaintiff is either attempting to undo that reality through this judicial process with the sole aim of "obtain[ing] the value of all of the assets in the estate," (*see* Defendants' September 14, 2020 letter at 1), or Plaintiff is displeased by the fact that Mr. Kornegay (and not him) ultimately inherited Mrs. Dickinson's assets and this civil action therefore is a product of Plaintiff's vindictiveness rather than bona fide and credible issues. Neither of those assessments are true, nor do they accurately reflect the facts and circumstances driving this case—facts and circumstances that properly support the causes of action put forth by Plaintiff.

Therefore, it is Plaintiff's belief that in order for the Defendants (in particular, Charles Kornegay) to fully recognize the seriousness of the claims brought against him and his wife, and also for the Court to fully understand what is at stake here, it is both necessary and important that a proper and accurate assessment of the trajectory of this case be carefully examined in order to fully understand how we arrived in the position that we're in today and why it is irrelevant to the success of Plaintiff's claims that Charles Kornegay was appointed Administrator of Doris Dickinson's estate *solely based* on the fact that he and his wife essentially committed a criminal act to obtain the appointment.[1]

---

[1] As Plaintiff explained in his complaint, he is not challenging the validity of the probate process in this civil action. (*See* Complaint at ¶ 100). Nor is he challenging the criminal act that was carried out by the Defendants, in

2

To begin with, a crucial and integral aspect of Plaintiff's cause of action involves the Defendants' willful and malicious destruction of documents material to Doris Dickinson's wishes as to how she wanted her estate to be distributed and her interaction with Plaintiff spanning more than a decade which were stored in Mrs. Dickinson's apartment following her death. Plaintiff now has reasons to believe that those documents included Mrs. Dickinson's will. Furthermore, Plaintiff is aware that Mrs. Dickinson kept a journal in her apartment in which she chronicled her decade-long interaction with him ranging from how well Plaintiff cared for her, to her dedication to repay him for all that he had done for her and her late husband.[2] That document was among the slew of documents that were destroyed by the Defendants who, interestingly, are now attempting to convince the Court that their malicious and illegal conduct was within their "right" to execute.

According to the Defendants, because "Charles Kornegay, who is the brother of [Doris Dickinson], was appointed as the Administrator of the estate by the Kings County Surrogates Court, [he] had **every right** (*and obligation*) to enter [Doris Dickinson's] premises and[,] [as Mr. Kornegay explained], *wind up her affairs*." (*See* Defendant's September 14, 2020 Letter at 2) (emphasis added). But Mr. Kornegay and his wife, Irene Kornegay, did not enter Mrs. Dickinson's apartment with the intent to "wind up her affairs," as they now claim. Instead, their

---

part, to deceive the probate process. That matter is for another time. Instead, part of Plaintiff's challenge is that the Defendants, through their malicious and despicable conduct, unlawfully enriched themselves at the expense of benefits that Plaintiff is rightfully entitled to.

[2] Because Plaintiff knew that these documents were secured in Mrs. Dickinson's apartment, and because he also understood that officials representing Kings County probate process would, at some point, enter Mrs. Dickinson's apartment looking for documents and other effects that were germane to how she wanted her estate to be distributed, to avoid the *appearance* of impropriety on his part, Plaintiff thought that it was prudent for him to simply leave everything in the apartment (including the stored documents) as how Mrs. Dickinson had left them. He did not anticipate that Charles Kornegay and his wife would be so brazen to break into Mrs. Dickinson's apartment and destroy the documents stored therein given the fact that Mr. Kornegay and his wife had to have known that they would be observed going into the apartment and doing anything that they were not allowed to, which Plaintiff reasonably believed was a valid deterrence. As outlined in the complaint, neither Charles Kornegay nor his wife cared about whether they would be seen carrying out their illicit action. The anticipation and profound sense of gratification of a lofty payday that they felt had clouded their vision and objectivity.

3

objective was a sinister one. They rummaged through Mrs. Dickinson's apartment looking for documents that they believed would impede Mr. Kornegay's *opportunity* to inherit Mrs. Dickinson's estate through the probate process as her "next in line" surviving relative. And once they discovered that there was an abundance of documents stored in Mrs. Dickinson's apartment that would have effectively interfered with, and ultimately prevented, Mr. Kornegay's objective of claiming Mrs. Dickinson's estate through the probate process, they brazenly destroyed those documents. As stated, among those documents were Mrs. Dickinson's will and a journal that Mrs. Dickinson kept in which she recorded and expressed her appreciation for Plaintiff's unwavering dedication and commitment to caring for her, as well as her intent to ultimately repay him for all that he had done.[3] The Defendants, through their actions, took serious steps to ensure that that intent never come to fruition. They do not deny destroying documents that they illegally removed from Doris Dickinson's apartment, nor can they.[4] Furthermore, neither can they *explain* <u>why</u> they removed documents stored in Mrs. Dickinson apartment and <u>why</u> they destroyed those documents.[5]

Crucial to the Defendants' contention that they "had every right (and obligation) to enter [Mrs. Dickinson's apartment]," (*see* Defendants' September 14, 2020 Letter at 2), given the fact that the Surrogates Court issued an order (*See* Exhibit A) expressly barring the Defendants from

---

[3] In consideration of the fact that the only document filed in this case by Plaintiff thus far is his complaint, coupled with the fact that the case is still at its initial stage, any contention regarding factual matter alleged in the complaint must be examine against the Federal Rules of Civil Procedure's Rule 8(a) provision which "requires only '*a short and plain statement* of the claim showing that the pleader is entitled to relief' in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007) (emphasis added); cf. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002) (holding that "a heightened pleading requirement," requiring the pleading of "'specific facts' beyond those necessary to state [a] claim and the grounds showing entitlement to relief," was "impermissibl[e]."); Twombly, 550 U.S. at 570 ("we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").

[4] In the event the Defendants choose to make that leap, Plaintiff is prepared to present his evidence showing otherwise.

[5] These questions will be vigorously addressed during the discovery stage.

4

entering Mrs. Dickinson's apartment *without the supervision* of the Kings County Public Administrator and the New York City Police Department, it is fundamentally disingenuous for the Defendants to now attempt to convey to this Court that their actions were within their "right" to execute, or for them to make that claim in light of the serious allegations raised by Plaintiff in his complaint. (*See* Plaintiff's Complaint ¶ 92-96). As a matter of law, in order this Court to dismiss Plaintiff's complaint solely based on the content of the Defendants' September 14, 2020 letter, or for the Court to do so based on the Defendants' anticipated motion to dismiss, the Defendants will actually have to present some proof establishing the complaint's insufficiency, as well as a sound legal basis that warrant the desired dismissal. Cf. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (Headnote, Pleading § 103) (2007) (explaining that "[w]hile a complaint attacked by a Fed. R. Civ. P. 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level."); *see also* Littlejohn v. City of New York, 795 F.3d 297, 307-07 (2nd Cir. 2015) ("On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor."), *citing* Ofori-Tenkorang v. Am. Int'l Gr., Inc., 460 F.3d 296, 300 (2nd Cir. 2006).

As to the Defendants' claim that "Plaintiff is not named in a will, not an heir, [and] has no[] contract rights," (Defendants' September 14, 2020 Letter at 2), the reason for this is because the Defendants destroyed the very documents that they are now accusing Plaintiff of not producing in support of his claims. Clearly, the Defendants cannot expect to go far with such a dishonest and treacherous defense affixed to their sail.[6]

5

In sum, the Defendants are clearly hoping that this case will be perceived as a nuisance by the Court and a usurpation of the Court's valuable time and resource. And as such, the Court will grow impatient and simply throw the case out. But as stated, more than mere bald assertion is needed to defeat Plaintiff's claims. Moreover, nothing about Plaintiff's lawsuit is "misguided" as the Defendants contend, or frivolous, as the Defendants seem to suggest in their September 14, 2020 letter to the Court. Indeed, a lot more than legal semantics is needed to overcome the serious and insurmountable claims raised by Plaintiff in his complaint. (cf. Complaint at ¶ 95). And to be sure, Plaintiff is prepared to defend not only Mrs. Dickinson's legacy from her opportunistic, rapacious and sinister brother who has the gall to now claim that he and Mrs. Dickinson were close when, in reality, they had absolutely no contact whatsoever in over a decade *because* that was exactly how Mrs. Dickinson wanted it to be,[7] but also his more than ten years of service, commitment and dedication to taking care of Mrs. Dickinson and ensuring throughout that, despite her physical limitations, she lived her life with experiencing some level of dignity and, most of all, that she experienced an abundance of happiness rather than the snare of loneliness that would have otherwise engulfed her but not for Plaintiff's presence.[8]

Lastly, whether "Charles Kornegay and his wife, Irene, are hardworking and family people" (September 14, 2020 letter at 2) is irrelevant to the facts and circumstance driving this case. Nevertheless, what is clear is that that particular sentiment is wholly contradicted by the

---

[6] While the Defendants are represented by counsel, Plaintiff respectfully states that sentiments like these are directed towards the Defendants.

[7] In his complaint, Plaintiff described that "Mrs. Dickinson never spoke about having a brother"; nor did she "[]ever mentioned the name Charles Kornegay to Plaintiff," (Complaint at ¶ 99), which she certainly would have done considering that Mrs. Dickinson took steps to make sure that Plaintiff developed a relationship with those relatives who were close to her. And Charles Kornegay was not among those relatives.

[8] Indeed, if Mr. Kornegay and Mrs. Dickinson were close as Mr. Kornegay now claim, knowing that his sister was blind and ultimately became a double amputee, he would have showed and expressed his love and support for her. He never did. But when it came time to benefit from Mrs. Dickinson's death, he came banging on the doors of the Surrogates Court claiming everything that were in sight. He did not even have the decency to at least show his respect by attending Mrs. Dickinson's funeral. Shame on him.

6

fact that the Defendants (the so-called "hardworking and family people") conspired to rob Mrs. Dickinson's estate solely for their own personal benefit.[9] And the ensuing irony is that the money that they stole is currently being used to pay for their legal defense, thus adding insult to injury. In recognizing this ostensibly perfidious use of the legal process, Plaintiff respectfully request that the Court exercise its discretionary powers and seriously consider putting a freeze on the Defendants' assets in order to prevent them from further benefiting from their unjust enrichment, at least until the Defendants come forth with some evidence to refute Plaintiff's claims. *See* Caperton v. A.T. Massy Coal, 173 LEd.2d 1208, 1234 (2009) (Scalia, J., dissenting) ("What above all else is eroding public confidence in the Nations' judicial system is the perception that litigation is just a game, that the party with the most resourceful lawyer can play to win, and that our seemingly interminable legal proceedings are wonderfully self-perpetuating but incapable of delivering real-world justice."); *see also* King v. Pelkofski, 20 N.Y.2d 326, 333-34, 282 N.Y.S.2d 753 (1967) (holding that a lienholder has a right to equitable subrogation).

### III. DISCUSSION

Addressing the Defendants' contentions raised in their September 14, 2020 letter to the Court is fairly straightforward.

First, nowhere in Plaintiff's complaint did he "acknowledge[] that [Doris Dickinson] did not have a valid will in effect at the time of her death." (Defendants' September 14, 2020 Letter at 1). To the contrary, Plaintiff stated the opposite. (*See e.g.*, Complaint at n.11).

---

[9] Cf. Bayh v. Sonnenburg, 573 N.E.2d 398, 408 (Ind. 1991) (To prevail on a claim for unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust).

7

Secondly, "there is no written agreement between [P]laintiff and [Mrs. Dickinson] for compensation" *because* the Defendants destroyed the evidence that would have undeniably established that agreement. (Defendants' September 14, 2020 letter at 1).[10]

And third, whether "[P]laintiff fail[ed] to allege facts constituting fraud or undue influence by the defendants" (*see* id.) is a purely legal question that Plaintiff is prepared to defend after Defendants file their motion to dismiss and/or motion for summary judgment. The bald allegations set forth in the Defendants' September 14, 2020 letter to the Court is woefully insufficient to overcome the well-pleaded factual allegations and legal theory outlined by Plaintiff in his complaint. *See* Littlejohn v. City of New York, 795 F.3d at 307-07 (2nd Cir. 2015) ("On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor."). Simply put, more is needed.[11]

---

[10] There is sufficient circumstantial evidence, however, that establishes that agreement. Cf. Bright v. Kuehl, 1650 N.E.2d 311 (1995) (explaining that in order "[t]o recover under the theory of implied contract, the plaintiff is usually required to establish that the defendant impliedly or expressly requested the benefits conferred. Any benefit, commonly the subject of pecuniary compensation, which one, not intending it as a gift, confers upon another who accepts it, is an adequate foundation for a legally implied or created promise to render back its value.").

[11] Cf. Mid-Hudson Catskill Rural Migrant Ministry, Inc v. Fine Host Corp., 418 F.3d 168, 175 (2nd Cir. 2005) (explaining that "[i]n order to recover in *quantum meruit* under New York law, a claimant must establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services."). All of these elements have been pled in Plaintiff's complaint.

8

## IV. CONCLUSION

For all the reasons set forth above, Plaintiff respectfully asserts that the Defendants have not presented any credible and reliable evidence or information that would justify this Court dismissing his complaint at this early stage of the proceeding. Charles Kornegay and his wife, without question, saw an opportunity to enrich themselves at the expense of Mr. Kornegay's estrange sister—a sister who he knew despised him and wanted nothing to do with him. Nevertheless, once he realized that he had an opportunity to claim Mrs. Dickinson's estate without her preventing him from doing so, he seized upon that opportunity like a hawk pursuing a vole. In doing so, he conferred and conspired with his sister, Peggy Kornegay, who provided him with information about Mrs. Dickinson's affairs and all the potential impediments that would stand in his way. And because Peggy Kornegay abhorred Plaintiff, she was more than delighted to see to it that her brother, Charles Kornegay, was armed with all the information he needed to snare Mrs. Dickinson's estate.

Importantly, as the appointed Administrator of Mrs. Dickinson's estate, Charles Kornegay had no reason to enter Mrs. Dickinson's apartment without the supervision and knowledge of the Kings County Public Administrator and the New York City Police Department—*unless* his intent in doing so was for a sinister and evil purpose. To infer otherwise would defy logic and commonsense.

With that being said, this case, without question, is not about a fly-by-night Plaintiff looking for a payday. Instead, it is about righting a grave injustice that occurred to the legacy of a good woman who worked hard to accomplish all that she did during her life, and it's about righting the injury that Plaintiff suffered as a result of the actions of the Defendants. Neither Charles Kornegay nor Irene Kornegay can escape the consequences of their actions, even with

9

the thousands of dollars of Doris Dickinson's money that they are currently in legal fees for their treachery and their egregious conduct to be excused and go unpunished. Simply put, this Court should not allow the Defendants off the hook based on their obsequious attempt to cling to proceduralism and avoid confronting the merits of this case, certainly not without them first being required to demonstrate that Plaintiff's claims have no merit. Until then, this case should be allowed to proceed forward.

Dated: September 15, 2020

Respectfully submitted,

_____
Christopher McKie (Plaintiff, *Pro Se*)
733 Sheffield Avenue
Brooklyn, New York 11207
Phone: (347) 362-4880
Email: damanimckie@gmail.com

10

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September 2020, a true and correct copy of the attached PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPTEMBER 14, 2020 LETTER TO THE HONORABLE KIYO A. MATSUMOTO was sent to the attorney for the Defendants as listed below by way of First-Class mail:

> William V. DeCandido, Esq.
> Attorney for Defendant Charles Kornegay
> 71-50 Austin Street, Suite 208
> Forest Hills, New York 11375

/s/ *(signature)*
Christopher McKie, (Plaintiff, *Pro Se*)
733 Sheffield Avenue
Brooklyn, New York 11207
Email: damanimckie@gmail.com
Phone: (347) 362-4880

# EXHIBIT A

At a Surrogate's Court held in and for the County of Kings at the Court House in the Civic Centre, 2 Johnson Street, in the Borough of Brooklyn, on the 24 day of September in the year 2019.

**HON. MARGARITA LÓPEZ TORRES**
Present, _____Surrogate_____, Surrogate

File No. 2019-3698

In the Matter of the Application for a Search of Premises for the Will of

__Doris Faye Dickinson__, Deceased

# Order

Upon reading and filing the petition of __Wilford A. Kornegay__, verified on the __24__ day of __September__, 20__19__, the NYPD is hereby ordered and directed and hereby authorized to allow __The Kings County Public Administrator__ to open the room/apartment/house at __737 Sheffield Ave # 1R Blk NY 11207__ occupied by __Doris F. Dickinson__, deceased, in the presence of the Police Department of New York City and examine the contents of said room/apartment/house (premises) for any last Will and Testament of said deceased or any codicil thereto and without removing any other article therefrom if any will or codicil be found therein, the said representative of the Police Department of New York City is hereby ordered and directed to deliver the same personally or by registered mail to this Court, and it is further,

Ordered that the Kings County Public Administrator be permitted to make an inventory of said room (premises); and it is further Ordered that a copy of the inventory be filed with the Court; and it is further Ordered that the Kings County Public Administrator be permitted to make copy of any papers found therein bearing upon the desire of the deceased as to the disposal of his/her remains, and if a deed to a cemetery plot be found therein that the same be delivered to the Kings County Public Administrator; and it is further Ordered that if any policy or policies of insurance issued in the name of said decedent and payable to a named beneficiary be found therein that the same be delivered to the beneficiary or beneficiaries named therein.

_Margarita López Torres_

**Surrogate**