UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
CHRISTOPHER MCKIE,

                Plaintiff,              **MEMORANDUM & ORDER**
                                        20-CV-2973 (KAM) (CLP)

      -against-

THE ESTATE OF DORIS DICKINSON,
CHARLES KORNEGAY, *Administrator*
*of the Estate of Doris Dickinson*,
and JANE DOE,

                Defendants.
----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Christopher McKie, proceeding *pro se*,
commenced this civil action against defendants Estate of
Dickinson, Charles Kornegay, the Administrator of the Estate of
Doris Dickinson, and Irene Kornegay[1] (collectively,
"Defendants"). Plaintiff alleges that defendants conspired to
deprive him of property and benefits he is entitled to,
following the death of Ms. Doris Dickinson. (*See* ECF No. 1,
Complaint ("Compl.") at 1-2.) Plaintiff alleges the following
claims against defendants: fraudulent misrepresentation,
fraudulent concealment, and tortious interference (Counts I-
III), as well as breach of fiduciary duty, aiding and abetting
breach of fiduciary duty, conversion, unjust enrichment, quantum
meruit, and indebitatus assumpsit (Counts IV-IX). (*Id.* at 4.)

---

[1]    Irene Kornegay is identified as "Jane Doe" in plaintiff's complaint and
on the court's docket.

Plaintiff seeks a constructive trust, compensatory damages, punitive damages, and costs.  (*Id.* at 41-42.)

Presently before the court is defendants' motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (*See* ECF Nos. 21, Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Mem."); 21-2, Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Pl. Mem."); 21-2, Defendants' Reply Memorandum ("Def. Reply Mem.).)  For the reasons set forth below, defendants' motion to dismiss is GRANTED.

## BACKGROUND

The following facts -- drawn from the complaint and documents that are incorporated by reference in, or integral to, the complaint -- are assumed to be true for purposes of this motion.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  The court may also consider matters subject to judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).[2]

---

[2]    As discussed below, plaintiff's claims in the instant case are related to proceedings in the Kings County Surrogate's Court (the "Surrogate's Court").  The court has taken judicial notice of public records filed in connection with those proceedings.  *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).  The court has also considered documents filed in the prior case involving the same plaintiff, similar defendants, and analogous facts to the instant case because plaintiff incorporated those documents into his complaint.  (*See* Compl. at 24 n.9 (referring to and incorporating plaintiff's previous case, *McKie v. Est. of Dickinson*, No. 20-

I.    **Plaintiff's First Complaint**

On March 2, 2020, plaintiff filed a civil action against the Estate of Dickinson and its two co-administrators, Charles Kornegay and Peggy Kornegay.  *See McKie v. Est. of Dickinson*, No. 20-cv-1050 (KAM) (ECF No. 1, Complaint (the "first complaint")).  In the first complaint, plaintiff alleged federal subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1335, and 1343(a)(1), but his complaint asserted no federal claims, interpleader, or civil rights violations.  Plaintiff also alleged that this court had diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), but plaintiff failed to allege the domicile of any party and conceded that both plaintiff and defendant Peggy Kornegay were residents of New York State.  In the first complaint, plaintiff sought monetary damages, a declaratory judgement "that he is the rightful beneficiary to Doris Dickinson's estate," and "a preliminary injunction ordering that any and all proceedings brought against the estate of Doris Dickinson be halted immediately and held in abeyance pending the outcome of this civil action."  (*See* Case No. 20-cv-01050, ECF No. 1, Complaint at 36-37.)

---

cv-1050 (KAM), (E.D.N.Y. 2020), which was previously dismissed by this court without prejudice for lack of subject matter jurisdiction).)

On May 29, 2020, this court dismissed plaintiff's complaint without prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3). *See McKie v. Est. of Dickinson*, No. 20-cv-1050 (KAM), 2020 WL 2797243, at *3 (E.D.N.Y. May 29, 2020). This court reasoned that even if plaintiff dismissed the New York-resident defendant in order to assert complete diversity of citizenship, most of plaintiff's claims would "fall squarely within the probate exception to diversity jurisdiction" or run afoul of the Anti-Injunction Act. *Id.* Plaintiff filed a notice of appeal on June 23, 2020, but failed to pay the filing fee in full or move for in forma pauperis status. (Case No. 20-cv-1050, ECF Nos. 19, 20.) Accordingly, plaintiff's appeal was dismissed effective August 3, 2020 and the mandate was issued on October 21, 2020. (Case No. 20-cv-1050, ECF Nos. 20, 21.)

## II. Plaintiff's Second Complaint

### A. The Parties

On July 1, 2020, plaintiff initiated a second lawsuit and filed the instant operative complaint. (ECF No. 1, Compl.) In the instant complaint, plaintiff sued defendants Estate of Dickinson, Charles Kornegay, the administrator of the estate of Doris Dickinson, and Irene Kornegay, Mr. Kornegay's wife. (*Id.* at 1.) Charles and Irene Kornegay are residents of South Carolina. (*Id.* at 3.) Notably, Peggy Kornegay, a defendant and

New York resident identified in the first complaint, is no
longer a party to the current action.  Thus, in the instant
operative complaint, plaintiff asserts diversity jurisdiction
pursuant to 28 U.S.C. § 1332(a).  (*Id.* at 2.)

### B. Plaintiff's Factual Allegations and Claims

Plaintiff alleges the following facts, which are
substantially similar to those alleged in the first complaint:
plaintiff became Mr. and Mrs. Doris Dickinsons' driver in 2006,
and developed a close relationship with the Dickinsons over more
than a decade.  (Compl. ¶¶ 10, 15.)  Plaintiff became the
Dickinsons' "*de facto* personal assistant," doing chores like the
laundry and taking out the trash, and running errands like
grocery shopping, paying bills, and doing light repair work
around the Dickinsons' apartment buildings.  (*Id.* ¶ 22.)  Mr.
and Mrs. Dickinson owned two multi-family apartment buildings
located on Sheffield Avenue in Brooklyn, New York.  (*Id.* ¶ 21.)
In October 2008, Mr. Dickinson died, and plaintiff began going
to see Ms. Dickinson every day.  (*Id.* ¶¶ 29-31.)

Around May 2010, plaintiff and his son moved into one
of the apartments in Ms. Dickinson's building, allowing them to
assist her more easily.  (*Id.* ¶¶ 43-44.)  Plaintiff continued
assisting Ms. Dickson, including with financial affairs such as
collecting rent from Ms. Dickinson's tenants and monitoring the
maintenance of her buildings.  (*Id.* ¶ 47.)  By the time of Ms.

Dickinson's death on September 11, 2019, plaintiff had been her companion, caregiver, and assistant, managing her personal and financial affairs, for a number of years.

Plaintiff alleges that Ms. Dickinson intended to name him as the beneficiary of her estate to compensate him for his services and that Ms. Dickinson informally created documents reflecting her testamentary intent; plaintiff also concedes, however, that Ms. Dickinson died intestate.  (Compl. ¶¶ 20, 26, 62, 64, 76 n.9, 99.)  Specifically, in September 2018, Ms. Dickinson expressed a desire to transfer the title of her truck to plaintiff, but plaintiff never filed the paperwork.  (*Id.* ¶ 67.)  During October 2018, Ms. Dickinson allegedly told plaintiff that she "wanted to leave everything that she owned to" plaintiff and instructed him to write on a paper that in the event of her death, "all of her real estate holdings, the funds in her bank accounts, and every other assets" would go directly to plaintiff.  (*Id.* ¶ 62.)  Plaintiff observed Ms. Dickinson sign and date a document reflecting her intent to leave everything to plaintiff, which was then placed inside a dresser drawer in Ms. Dickinson's bedroom.  (*Id.*)  There were no witnesses to observe Ms. Dickinson sign this 2018 document and Ms. Dickinson apparently never revealed or discussed the contents of this document with another person, other than

plaintiff.  Nor did plaintiff obtain a copy of the 2018 document.

In or around May 2019, Ms. Dickinson decided to "get[] her estate in order" and contacted real estate attorney Fern Dejonge to draft and execute a will.  (Compl. ¶¶ 74-75.) Plaintiff allegedly attended a meeting where Ms. Dickinson explained to Ms. Dejonge that she wanted plaintiff to be the sole beneficiary of her will and for her entire estate to go to plaintiff.  (*Id.* ¶ 76.)  Ms. Dejonge allegedly agreed to draft the will and bring a final draft to Ms. Dickinson by September 13, 2019 for Ms. Dickinson to review and sign.  (*Id.*)  Ms. Dickinson passed away on September 11, 2019 and the complaint does not allege that Ms. Dickinson actually executed any will. (*Id.*)

At the time of Ms. Dickinson's death, plaintiff was unaware that Ms. Dickinson had any siblings.  (Compl. ¶ 86.) Ms. Dickinson never mentioned she had a brother, defendant Charles Kornegay, and Mr. Kornegay did not attend Ms. Dickinson's funeral.  (*Id.* ¶¶ 84-85.)  Plaintiff alleges that he arranged Ms. Dickinson's funeral and paid for all funeral expenses.  (*Id.* ¶ 84.)

Following Ms. Dickinson's death, Peggy Kornegay, Ms. Dickinson's aunt, asserts that she wished to make Ms. Dickinson's "funeral and burial arrangements and to find her

last will and testament and to make sure that it was honored."
(*See* Case No. 20-cv-01050, ECF No. 9, Answer by Peggy Kornegay
("P. Kornegay Answer").)[3]  Ms. Peggy Kornegay asserts that
plaintiff refused to turn over keys to Ms. Dickinson's
apartment, refused to turn over Ms. Dickinson's bank cards, and
said that plaintiff would "take money out of [Ms. Dickinson's]
account for her funeral arrangements."  (*Id.*)  One evening after
Ms. Dickinson's death, plaintiff permitted Ms. Peggy Kornegay to
inspect the decedent's home with plaintiff and they found an
insurance policy designating plaintiff as the beneficiary.
(*Id.*)  Ms. Peggy Kornegay alleges that she took the insurance
policy to the funeral home to pay for expenses and that
plaintiff never produced any money taken from Ms. Dickinson's
accounts.  (*Id.*)  Ms. Kornegay was "never granted access to the
apartment again" and went to the Public Administrator's Office
to inquire about becoming the administrator of the estate.
(*Id.*)

On September 24, 2019, upon filing of a petition from
Wilford Kornegay (Ms. Peggy Kornegay's son), the Surrogate's
Court ordered the Public Administrator to inspect decedent's
apartment to ascertain if the decedent had a last will and
testament and take an inventory.  (*See* ECF No. 21-2, Exhibit C,

---

[3]     The court may properly consider Ms. Peggy Kornegay's answer in the
prior action (Case No. 20-cv-1050) because plaintiff incorporated Ms.
Kornegay's answer into his instant operative complaint.  (*See* Compl. ¶ 85.)

Order, Sept. 24, 2019, Case No. 2019-3698/A, Surr. Ct. King's
Cty.)  In or around October 2019, Ms. Peggy Kornegay stated that
she inspected Ms. Dickinson's apartment with officers from the
Public Administrator's Officer and although the decedent's
father's will was found, no will by the decedent was discovered.
(*Id.*)

On November 8, 2019, "with no one appearing in
opposition thereto," the Surrogate's Court issued a decree
appointing defendant Charles Kornegay as the administrator of
Ms. Dickinson's estate.  (*See* Decree Appointing Administrator,
Nov. 8, 2019, Case No. 2019-3698/A, Surr. Ct. King's Cty.)[4]  That
same day, the Surrogate's Court also issued a written Decision,
stating:

> Jurisdiction has been obtained over all
> interested parties in this administration
> proceeding.  No objections have been filed
> to the Petition and Petitioner appears to be
> competent to act as the administrator of the
> estate.  Accordingly, Letters of
> Administration shall issue to the Petitioner
> upon duly qualifying.

---

[4]    The court can and does properly take judicial notice of public records
on file with the Kings County Surrogate's Court.  *See, e.g.*, *Lefkowitz v.
Bank of New York*, 676 F. Supp. 2d 229, 238-39 & n. 1 (S.D.N.Y. 2009) (taking
judicial notice of Surrogate's Court and state Supreme Court findings and
decisions); *Cavanaugh v. Geballe*, No. 20-cv-00981 (KAD), 2021 WL 781796, at
*2 (D. Conn. Mar. 1, 2021) (taking judicial notice of probate proceedings
pending in the state of Connecticut); *Black v. Wrigley*, No. 16-cv-430 (CBA)
(ST), 2017 WL 4402444, at *2 (E.D.N.Y. Sept. 30, 2017) (taking judicial
notice of public records filed in connection with probate proceedings in
state of Colorado).

(*See* Decision, Nov. 8, 2019, Case No. 2019-3698/A, Surr. Ct. King's Cty.)[5]  On November 12, 2019, the Surrogate's Court issued Letters of Administration to Charles Kornegay, qualifying him as the administrator of the estate of Doris Dickinson.  (*See* ECF No. 21, Ex. B, Certificate of Appointment of Administrator.)

In late November 2019, plaintiff alleges that defendant Charles Kornegay appeared at Ms. Dickinson's apartment and allegedly proceeded to destroyed the informal documents described above.  (Compl. ¶¶ 92-95.)  Furthermore, defendant Charles Kornegay allegedly used his position as administrator of the estate to seize all the decedent's assets, including a truck that had allegedly been purchased with plaintiff's funds, but retained a title of ownership under the decedent's name.  (*Id.* ¶¶ 91-95, 98.)  Plaintiff further alleges that he was not compensated for his work in caring for the decedent and managing her financial, medical, and real estate affairs.

Plaintiff alleged the above facts in this second lawsuit, and common law claims for fraudulent misrepresentation,

---

[5]    New York law defines a "personal representative" as "a person who has received letters to administer the estate of a decedent."  N.Y. Est. Powers & Trusts Law § 1-2.13.  "Letters of administration, the document necessary to be deemed a personal representative of the decedent's estate, are granted by the Surrogate's Court.  Under the Surrogate's Court Procedure Act, the order of priority for granting letters of administration to distributees of a decedent who died intestate begins with the surviving spouse, followed by the children and then various other family relations." *Frometa v. Mar-Can Transp. Co., Inc.*, No. 21476/2018E, 2021 WL 1324223, at *6 (N.Y. Sup. Ct. Apr. 8, 2021) (citing N.Y. Surr. Ct. Proc. Act Law § 1001(1)).  Any person to whom letters of administration have been issued is known as an "administrator" under New York law.  N.Y. Surr. Ct. Proc. Act Law § 103(2).

fraudulent concealment, and tortious interference (Counts I-III), as well as breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, unjust enrichment, quantum meruit, and indebitatus assumpsit (Counts IV-IX). (Compl. ¶ 9.) Plaintiff seeks a constructive trust, compensatory damages and punitive damages from defendants, "pecuniary compensation and pecuniary damages from the estate of Doris Dickinson," treble damages against all defendants, and reasonable costs and expenses. (*Id.* ¶¶ 113-120.)

**III. Defendants' Motion to Dismiss**

On September 14, 2020, defendants filed a pre-motion conference request, seeking leave to file a motion to dismiss plaintiff's complaint for failure to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF. No. 10.) Plaintiff opposed defendants' request for a pre-motion conference in a letter dated September 24, 2020. (ECF. No. 11.) The court held a pre-motion conference on October 1, 2020, where the parties appeared to discuss defendants' proposed motion to dismiss. (*See* Minute Entry 10/1/2020.) At the pre-motion conference, plaintiff Christopher McKie confirmed that he did not wish to amend his complaint and the court set a briefing schedule for defendants' motion to dismiss. (*Id.*) The defendants' motion to dismiss was fully briefed on December 16, 2020. (ECF No. 21.) Plaintiff

filed an unauthorized sur-reply to defendants' reply memorandum on December 22, 2020.  (ECF No. 22, Plaintiff's Sur-reply.)[6]

Presently before the court is defendants' motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  (*See* ECF No. 21.)  Specifically, defendants move to dismiss plaintiff's complaint on the grounds that: (1) plaintiff has failed to plausibly allege that he was entitled to any part of the decedent's estate as a matter of law; (2) plaintiff's compensation claims fail as a matter of law; and (3) plaintiff's fraud claims are conclusory and implausible, or otherwise fail as a matter of law.

## LEGAL STANDARD

### I.   Federal Rule of Civil Procedure 12(b)(6)

In evaluating defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in plaintiff's favor.  *See Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d

---

[6]     While defendants' motion to dismiss was pending, plaintiff also filed an unauthorized motion for preliminary injunction seeking the appointment of a receiver and seeking injunctive relief against defendants.  (ECF No. 15.)  The court terminated plaintiff's motion without prejudice and, at the request of plaintiff, scheduled another pre-motion conference to discuss plaintiff's motion for a preliminary injunction.  (*See* Dkt. Orders 10/23/2020, 10/30/2020.)  At a second pre-motion conference on November 5, 2020, the court advised plaintiff that the court would first decide defendants' motion to dismiss.  (Minute Entry 11/5/2020.)

122, 124 (2d Cir. 2008) (per curiam).  A claim survives a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.  If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." (*Id.* at 570.)  Where, as here, a plaintiff brings a claim of fraud, "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9.  *See also* N.Y. C.P.L.R. 3016 (McKinney) ("Where a cause of action or defense is based upon misrepresentation, fraud, mistake, willful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail").

     This court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards

than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Nonetheless, even though the court construes a *pro se* complaint liberally, the complaint must still "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (summary order) (quoting *Iqbal*, 129 S. Ct. at 1949); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint).

When addressing a Rule 12(b)(6) motion, the court is limited to reviewing the four corners of the complaint, any documents attached to that pleading or incorporated in it by reference, any documents that are "integral" to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the court may take judicial notice. *See, e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Leonard F. v. Israel Disc. Bank*, 199 F.3d 99, 107 (2d Cir. 1999). "Judicial notice may encompass the status of other lawsuits, including in other courts, and the substance of papers filed in those actions." *Lefkowitz v. Bank of New York*, 676 F. Supp. 2d 229, 249 (S.D.N.Y. 2009); *see, e.g.*, *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003); *Lefkowitz*, 676 F. Supp. 2d at 238-39 & n.1 (taking

judicial notice of Surrogate's Court and state Supreme Court findings and decisions).

## II.  Probate Exception to Federal Jurisdiction

Even when diversity jurisdiction is present, federal courts lack jurisdiction under the "probate exception" where a complaint seeks to (1) "administer an estate, probate a will, or do any other purely probate matter" or (2) "to reach a res in the custody of a state court." *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 106 (2d Cir. 2007) (internal quotation marks, alterations, and emphasis omitted).  The probate exception does not apply to actions that, although "intertwine[d]" with the probate action, "seek[ ] damages from Defendants personally rather than assets or distributions from [the] estate." *Id.* at 107-08 (holding plaintiff's breach of fiduciary duty, fraudulent misrepresentation, and fraudulent concealment claims were not barred under the probate exception).  But the probate exception does bar an action, even if presented as a claim seeking damages from a defendant personally, if it "seeks, in essence, disgorgement of [estate property] that remain[s] under control of the Probate Court" and if its resolution would require "the federal court ... to assert control over [that] property." *Id.* at 107.  In other words, the probate exception "prohibits federal courts from adjudicating claims relating to property over which a probate court has assumed jurisdiction,

regardless of whether that assumption of jurisdiction was proper." *Pelczar v. Pelczar*, 833 F. App'x 872, 875 n.6 (2d Cir. 2020) (summary order).

In determining whether a plaintiff seeks to reach a *res* under the custody or control of a state court, the Second Circuit contrasts claims seeking "in essence, a disgorgement of funds that remain under the control of the Probate Court," with claims for "damages from Defendants personally rather than assets or distributions from [an] estate." *See Lefkowitz*, 528 F.3d at 107-08. "When the court-appointed executors of an estate take possession of property on its behalf, that property is deemed to be within the custody of the court that authorized them to do so." *Architectural Body Research Found. v. Reversible Destiny Found.*, 335 F. Supp. 3d 621, 636 (S.D.N.Y. 2018) (collecting cases). Similarly, the probate exception applies to *in personam* claims that ask "the [d]istrict [c]ourt to undo specific actions already taken by the trustees during the period of probate administration that [the] [p]laintiffs disagree with." *Mercer v. Bank of New York Mellon, N.A.*, 609 F. App'x 677, 680 (2d Cir. 2015) (summary order).

## DISCUSSION

Plaintiff seeks relief for defendants' alleged fraudulent misrepresentation, fraudulent concealment, and tortious interference (Counts I-III), as well as breach of

fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, unjust enrichment, quantum meruit, and indebitatus assumpsit (Counts IV-IX).  (*See generally* Compl.)  Defendants move to dismiss plaintiff's complaint for failing to state a claim under Federal Rules of Civil Procedure 12(b)(6).  For the reasons set forth below, the court GRANTS defendants' motion to dismiss in its entirety.

## I.   **Plaintiff Failed to Allege and Establish Diversity Jurisdiction**

If a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 101 (2d Cir. 2015) (stating that a court must dismiss an action "on its own initiative" pursuant to Rule 12(h)(3) if it determines that it lacks subject matter jurisdiction "because the limited subject-matter jurisdiction of the federal courts is a restraint on judicial power" (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006))); *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed.").

For purposes of diversity jurisdiction, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent[.]"  28 U.S.C. § 1332(c)(2); *see also Johnson v. Smithsonian Inst.*, 4 F. App'x 69, 71 (2d Cir. 2001) (summary order) (observing that for purposes of 28 U.S.C. § 1332(c)(2) citizenship of decedent determined "at the time of his death"); *Romeo v. Aid to the Developmentally Disabled, Inc.*, No. 11-cv-6340 (JS)(GRB), 2015 WL 10742764, at *3 (E.D.N.Y. Jan. 7, 2015) ("It is well settled that the legal representative of a decedent's estate is deemed to have the same citizenship as the decedent.").

In this case, plaintiff brought suit against "the Estate's Administrator," defendant Charles Kornegay.  (Compl. at 1.)  Because the suit is brought against defendant in his official capacity as the administrator of the estate, defendant Charles Kornegay's citizenship is the same as the decedent.  *See* 28 U.S.C. § 1332(c)(2).  It is undisputed that the decedent passed away in her apartment in Brooklyn on September 11, 2019 and that her domicile was in New York.  (Compl. ¶ 76.)

Although plaintiff alleges that Mr. Kornegay is a citizen of South Carolina (Compl. ¶ 6), for purposes of diversity jurisdiction, Mr. Kornegay is deemed to be a citizen of New York under 28 U.S.C. § 1332(c)(2).  *See, e.g.*, *New York Life Ins. Annuity Corp. v. Ashworth*, No. 12-cv-215, 2014 WL

12717647, at *3 n.2 (D. Vt. Apr. 7, 2014) (treating defendant administrator as a citizen of the state where the decedent was a resident); *cf. Tarka v. Greenfield Stein & Senior, LLP*, No. 00-cv-1262, 2000 WL 1121557, at *6 (S.D.N.Y. 2000) ("Although she is a Connecticut resident, plaintiff is deemed to be a citizen of New York while acting in her capacity as administratrix of the Estate of her late mother, who was a New York resident."). Moreover, plaintiff also brought suit against the Estate of Doris Dickinson, which is also a New York resident by reference to Ms. Dickinson's domicile. *See Shakour v. Fed. Republic of Germany*, 199 F. Supp. 2d 8, 14 (E.D.N.Y. 2002) ("The citizenship of the Hollingsworth Estate for purposes of diversity jurisdiction is determined by reference to the decedent's domicile."). Accordingly, because plaintiff and some defendants are citizens of the same state, the court lacks subject matter jurisdiction to adjudicate this case, and the case must be dismissed for lack of subject matter jurisdiction.

## II.   The Probate Exception Divests this Court of Jurisdiction

Furthermore, even if plaintiff properly established diversity jurisdiction, six of plaintiff's claims (Counts IV-IX) are barred by the probate exception.  A federal court should decline subject matter jurisdiction under the probate exception only if a plaintiff seeks to: (1) administer an estate, probate a will, or accomplish any other purely probate matter; or (2)

reach a *res* in the custody of a state court.  *Lefkowitz*, 528
F.3d at 106 (citing *Marshall v. Marshall*, 547 U.S 293, 312
(2006)).

A court assessing whether a plaintiff seeks to reach a
*res* controlled by a state court "must examine the substance of
the relief that [the plaintiff is] seeking, not the labels they
have used."  *Mercer*, 609 F. App'x at 679.  As plaintiff notes,
the Second Circuit has permitted claims that sought "damages
from Defendants personally rather than assets or distributions
from either estate" to proceed in the district court.
*Lefkowitz*, 528 F.3d at 107-08; (*see* Pl. Mem. at 2-3).
Nonetheless, the Second Circuit also dismissed claims under the
probate exception that sought "to mask in claims for federal
relief [plaintiff's] complaints about the maladministration of
her parent's estates."  *Id.* at 107.  Critically, the *Lefkowitz*
court held that the probate exception applied to claims that
sought, "in essence, a disgorgement of funds" controlled by the
probate court.  *Id.*  "When the court-appointed executors of an
estate take possession of property on its behalf, that property
is deemed to be within the custody of the court that authorized
them to do so."  *Architectural Body Research Found.*, 335 F.
Supp. 3d at 636 (collecting cases).

Here, plaintiff argues that -- in contrast to his
claims in the first complaint asking to be named the rightful

beneficiary of the estate and for an injunction staying the Surrogate Court's proceedings -- his new claims in the instant complaint neither ask this court to dispose of property that is in the custody of a state probate court nor take over the administration of estate assets pending in probate courts. (Compl. ¶ 100.)  Rather, plaintiff seeks to "vindicate his rights" against defendants who, "conspir[ed] together [and] engaged in a number of seedy, dishonest, and treacherous tactics designed to obtain Doris Dickinson's estate and deprive Plaintiff of benefits that [plaintiff] is entitled to."  (Pl. Mem. at 4.)

Nonetheless, even though plaintiff styles his claims as seeking *in personam* damages from defendants in their individual capacities (*see* Compl. ¶¶ 101-111), the court concludes that the gravamen of plaintiff's claims in Counts IV-IX is that defendants obtained assets based on defendant Charles Kornegay's illegitimate designation as administrator of the decedent's estate and defendant Kornegay's actions as administrator of the estate.  Accordingly, although some courts in this Circuit have held that certain "in personam" claims may proceed even in light of the probate exception, *see Yien-Koo King v. Wang*, No. 14-cv-7694 (JFK), 2018 WL 1478044, at *8 (S.D.N.Y. Mar. 26, 2018); *Bartone v. Podbela*, No. 17-cv-03039 (ADS) (GRB), 2018 WL 1033250, at *6 (E.D.N.Y. Feb. 23, 2018),

this court, having reviewed the plaintiff's complaint, documents incorporated into the complaint, and matters subject to judicial notice, concludes that looking beyond the "labels [plaintiff has] used" to recast Counts IV-IX, plaintiff ultimately seeks to disgorge funds from the decedent's estate, not recover damages from defendants personally and, in doing so, undo actions already taken by the Surrogate's Court. *Mercer, N.A.*, 609 F. App'x at 679. For the reasons set forth below, the court concludes that it is divested of subject matter jurisdiction under the probate exception as to plaintiff's Counts IV-IX.

A. <u>Breach of Fiduciary Duty (Counts IV-V)</u>

Turning to the complaint, plaintiff's claims alleging breach of fiduciary duty (Count IV) and aiding and abetting breach of fiduciary duty (Count V), for example, are substantially claims sought against the estate. In arguing that his claims are not barred by the probate exception, plaintiff's reliance on *Lefkowitz* is misplaced. (*See* Pl. Mem. at 2 n.1, 9.) Although the Second Circuit has stated "the probate exception can no longer be used to dismiss 'widely recognized tort[s]' such as breach of fiduciary duty or fraudulent misrepresentation merely because the issues intertwine with claims proceeding in state court," *Lefkowitz*, 528 F.3d at 108 (citing *Marshall*, 126 S.Ct. at 1748), the facts in the instant case show that

22

plaintiff ultimately seeks disgorgement of the decedent's estate
in contravention of the Surrogate's Court's rulings.

In the instant case, plaintiff's breach of fiduciary
duty claims more than "intertwine" with the Surrogate's Court's
proceeding; specifically, plaintiff alleges that defendant
Charles Kornegay breached his fiduciary duty as administrator of
the decedent's estate through a "myriad acts of bad faith as
evidenced by their clear intent to unjustly enrich themselves."
(Compl. ¶ 108.)  Moreover, defendant Irene Kornegay "aided and
abetted" Charles Kornegay in breaching his fiduciary duty to the
estate of Doris Dickinson, and in depriving Plaintiff of
benefits that he is entitled to.  (Compl. ¶ 103.)  In his
opposition to defendants' motion to dismiss, plaintiff asserts
that defendants breached their fiduciary duty "to ensure that
[the decedent's] estate was distributed in accordance with her
wishes and intent" -- that is -- to leave the estate in its
entirety to plaintiff himself.  (Pl. Mem. at 40.)  Plaintiff
asserts that defendants "were well aware of Mrs. Dickinson's
wishes . . . [to] leav[e] her estate to him."  (*Id.*)

Thus, plaintiff's fiduciary duty claims, although
fashioned as *in personam* claims against defendants, would
functionally have this court undo the Surrogate's Court's
rulings in issuing Letters of Administration to defendant
Charles Kornegay and undermine the Surrogate's Court's official

actions. *See Byers v. McAuley,* 149 U.S. 608, 615 (1893) ("An administrator appointed by a state court is an officer of that court[;] [h]is possession of the decedent's property is a possession taken in obedience to the orders of that court; it is the possession of the court . . . [and] it is a possession which cannot be disturbed by any other court."); *see also Groman v. Cola*, No. 07-cv-2635 (RPP), 2007 WL 3340922, at *6 (S.D.N.Y. Nov. 7, 2007) (noting that certain assets remained "in the possession of the Estate and its executors, who are officers appointed by the Surrogate's Court . . . [and accordingly, the assets] are in the possession and control of the Surrogate's Court").

Here, plaintiff's fiduciary duty claims ultimately rely on the theory that defendants' fiduciary duty was to carry out Ms. Dickinson's unwritten testamentary intent to provide plaintiff assets from the estate, and thus, plaintiff's fiduciary duty claims seek to undermine official actions taken by the Surrogate's Court and award to plaintiff assets from the decedent's estate (*i.e.*, reach a *res* under the custody or control of the Surrogate's Court). Thus, plaintiff's fiduciary duty claims seeking damages are based on plaintiff's theory that defendants, in substance, mishandled estate assets by not distributing the assets to plaintiff and the claims are accordingly barred by the probate exception. *See Mitchell v.*

*Brownie*, No. 19-cv-06393 (EK)(ST), 2021 WL 1131560, at *3-4
(E.D.N.Y. Mar. 5, 2021) (dismissing fiduciary duty claims under
the probate exception where plaintiff sought, in substance, to
return to plaintiff allegedly mishandled funds belonging to the
estate (collecting cases)), *report and recommendation adopted*,
No. 19-cv-6393 (EK)(ST), 2021 WL 1124602 (E.D.N.Y. Mar. 24,
2021); *see also Mercer*, 609 F. App'x at 679 (affirming dismissal
of plaintiff's breach of fiduciary duty claim because
plaintiff's claim, although "styled" as an "*in personam*" claim
against defendants, sought in substance to undo specific actions
taken by the trustees during the probate administration period).

     B. Conversion (Count VI)

        Plaintiff's conversion claim (Count VI) is similarly
deficient and barred by the probate exception.  Under New York
law, "[t]he tort of conversion is established when one who owns
and has the right to possession of personal property proves that
the property is in the unauthorized possession of another who
has acted to exclude the rights of the owner."  *Angiolillo v.
Christie's, Inc.*, 103 N.Y.S.3d 244, 260-61 (N.Y. Sup. Ct. 2019);
*accord Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04
(2d Cir. 2006) ("According to New York law, '[c]onversion is the
unauthorized assumption and exercise of the right of ownership
over goods belonging to another to the exclusion of the owner's
rights.'" (alteration in original)).  In the complaint,

plaintiff alleges that defendants have "conspired with each other to convert and defraud Doris Dickinson's estate." (Compl. ¶ 108.) Thus, even though plaintiff seeks monetary damages, to grant relief under plaintiff's conversion claim, this court would have to find that plaintiff possesses a right of ownership over the decedent's estate's assets, contrary to the Surrogate's Court's rulings. Under these circumstances, the probate exception precludes the plaintiff's conversion claim. *See Bollenbach v. Haynes*, No. 18-cv-997, 2019 WL 1099704, at *3-4 (S.D.N.Y. Mar. 8, 2019) (concluding that plaintiff's claims for damages "essentially sound[ing] in conversion" were barred by the probate exception for attempting to divert assets already under supervision of the Surrogate's Court).

C. Unjust Enrichment, Quantum Meruit, and Indebitatus Assumpsit (Counst VII-IX)

Plaintiff alleges that defendants "have sought to enrich themselves by unjustly claiming, seizing, and retaining control over Mrs. Dickinson's estate contrary to Mrs. Dickinson's wishes, in addition to exerting control over Plaintiff's property, all at the expense of Plaintiff's entitlement to money owed to him and benefit that he is due from the estate's assets." (Compl. ¶ 106.) For relief, plaintiff seeks "the imposition of a constructive trust" based on defendants' "attempt to unjustly enrich themselves at the

expense of Plaintiff and the estate of Doris Dickinson." (*Id.* ¶ 110.)  Similar to his conversion claim, plaintiff's unjust enrichment claim requests, in substance, that this court invalidate the administration of the estate and/or assert control over assets of the estate.  Indeed, plaintiff expressly alleges that defendants enriched themselves "by unjustly claiming, seizing, and retaining control over Plaintiff's property" owed to him from the estate.  (*Id.* ¶ 106.)

As discussed above, however, the Surrogate's Court issued Letters of Administration to defendant Charles Kornegay as the administrator of the decedent's estate and, accordingly, any action taken by defendant Kornegay reflects the Surrogate's Court's authority.  Thus, an imposition of a constructive trust under these circumstances would require this court to exercise *in rem* jurisdiction over property under the custody and control of the Surrogate's Court, in violation of the probate exception.  *See Bartone*, 2018 WL 1033250, at *6 (an imposition of a constructive trust would require this Court to exercise *in rem* jurisdiction over property); *Yien-Koo King*, 2018 WL 1478044, at *8 ("[B]ecause the property and assets of the Estate are under the control of the Surrogate's Court, the probate exception applies to Plaintiffs' claims for constructive trust."); *Guthartz v. Guthartz*, No. 07-cv-4804 (JS)(WDW), 2008 WL 11449329, at *3-4 (E.D.N.Y. Sept. 2, 2008) (concluding that

plaintiff's attempt to impose a constructive trust on *res* in the custody of the Surrogate's Court violated the probate exception).

Plaintiff's quantum meruit claim is also barred by the probate exception for substantially similar reasons. "To state a claim for quantum meruit, a plaintiff must allege: (1) the plaintiff rendered services to defendant, (2) the defendant accepted such services, (3) the plaintiff expected reasonable compensation, and (4) the reasonable value of such services." *Magnacoustics, Inc. v. Integrated Computer Sols., Inc.*, No. 17-cv-4967 (RER), 2020 WL 4041310, at *10 (E.D.N.Y. July 17, 2020). Here, plaintiff alleges that defendants "interfered with Plaintiff's entitlement to be compensated . . . [and plaintiff] is entitled to quantum meruit recovery from the estate of Doris Dickinson." (Compl. ¶ 109.) Further, plaintiff seeks "pecuniary compensation and pecuniary damages from the estate of Doris Dickinson, along with equitable damages based on his quantum meruit recovery claim against Mrs. Dickinson's estate." (*Id.* ¶ 117.) Plaintiff concedes that he seeks a direct recovery from the decedent's estate and, thus, his quantum meruit claim is barred by the probate exception.

Finally, for substantially the reasons stated above, plaintiff's common law claim for indebitatus assumpsit (money had and received) is similarly barred by the probate exception.

Plaintiff alleges that he is "entitled to relief in the form of indebitatus assumpsit against the estate of Doris Dickinson" for alleged breach of contract and tortious interference by the defendants.  (Compl. ¶ 111.)  Plaintiff's claim thus seeks relief against the estate and consequently requests that this court exercise jurisdiction over *res* under the control of the Surrogate's Court.

Ultimately, as discussed above, plaintiff's redrawn complaints in Counts IV-IX, although styled as "in personam" claims against defendants, cannot circumvent the probate exception.  *See Mercer*, 609 F. App'x at 680 (concluding that plaintiff's claims for breach of fiduciary duty, breach of contract, and breach of the duty of loyalty could not be maintained because they essentially "are asking the District Court to undo specific actions already taken by the trustees during the period of probate administration that plaintiffs disagree with" while "another court is already exercising control over the trust"); *Lefkowitz,* 528 F.3d at 107 (concluding that plaintiff's claims for conversion and unjust enrichment, among others, were an attempt "to mask in claims for federal relief her complaints about the maladministration of her parent's estates, which have been proceeding in probate courts" and which would require the federal court "to assert control over property that remains under the control of the state

courts"); *Fisch v. Fisch*, No. 14-cv-1516 (NSR), 2014 WL 5088110, at *3 (S.D.N.Y. Sept. 23, 2014) (concluding that plaintiff's claim ran afoul of the probate exception because "while styled as a claim seeking actual damages from Defendant, his claim is really against the estate itself. Plaintiff is essentially seeking a declaration from this Court that a portion of the estate (or its equivalent amount of money) should go to him instead of to Defendant"); *Bollenbach*, 2019 WL 1099704, at *5 (concluding that plaintiff's claims for damages were "at their core predicated" on the decedent's designation of the defendant as beneficiary and defendant's receipt of assets upon decedent's death).

Indeed, this court's conclusion that plaintiff's claims "in essence, [seek] a disgorgement of funds that remain under the control of the Probate Court," *Lefkowitz*, 528 F.3d at 107-08, is reinforced by the fact that plaintiff filed a motion for a preliminary injunction while defendants' motion to dismiss was pending, seeking to enjoin defendants from selling, transferring, or otherwise encumbering assets of the decedent's estate.  (ECF No. 15.)  Thus, although plaintiff asserts that his claims are not barred by the probate exception, plaintiff's motion for injunctive relief against disposition of the estate's

assets is inconsistent with his contention that he only seeks "in personam" damages against defendants.[7]

Most recently, on July 22, 2021, plaintiff filed a motion for "expedited disposition" and requested that this court promptly proceed with considering the merits of defendants' motion to dismiss. (*See* ECF No. 23, Plaintiff's Request for Expedited Disposition on Civil Matter Currently Before the Court ("Mot. to Expedite").)  In addition to repeating arguments in plaintiff's opposition brief, plaintiff also admits that "the relief that Plaintiff seeks is in the form of tangible assets that can be readily liquidated." (*Id.* at 7.)  Thus, like his motion for injunctive relief, plaintiff's latest motion for an expedited decision confirms that plaintiff's purported *in personam* claims are claims against disposition of the estate's assets.[8]

---

[7]     In relevant part, plaintiff requested that this court "issue a lien, an *ex parte* temporary restraining order, and a prejudgment attached against all assets (including but not limited to the properties located at 733 and 737 Sheffield Avenue in Brooklyn, New York, along with all other real properties, bank account(s), investment instrument(s), dividends, and annuities) belonging to, and derived from, the Estate of Doris Dickinson." (ECF No. 15, at 1.)  Thus, plaintiff's own motion showed that he ultimately sought to assert control over the decedent's assets during the course of this litigation.

[8]     For the reasons discussed in this decision and contrary to plaintiff's assertion, the court declines to convert defendants' motion to dismiss into a motion for summary judgment because a review of the plaintiff's complaint, documents incorporated into the complaint, and matters subject to judicial notice can resolve defendants' motion to dismiss. (*See* Mot. to Expedite at 6.)

For the reasons stated above and consistent with precedent in this Circuit, this court concludes that the probate exception divests this court of subject matter jurisdiction over Counts IV-IX. *See Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed").[9]

Nonetheless, plaintiff also alleges *in personam* claims likely not barred by the probate exception against defendants in Counts I-III: fraudulent misrepresentation (Count I), fraudulent concealment (Count II), and tortious interference (Count III). In Counts I-III, plaintiff alleges that defendants, in their

---

[9]     Plaintiff also cannot remedy the present defects by arguing that there is no longer an active case pending in the Surrogate's Court, as was represented at the pre-motion conference. *See Mitchell v. Brownie*, No. 19-cv-06393 (EK)(ST), 2021 WL 1131560, at *3 (E.D.N.Y. Mar. 5, 2021), *report and recommendation adopted*, No. 19-cv-6393 (EK)(ST), 2021 WL 1124602 (E.D.N.Y. Mar. 24, 2021) (concluding that for jurisdictional purposes, the fact that Surrogate's Court was no longer actively administering the case did not bar application of the probate exception); *see also Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) ("the jurisdiction of the court depends upon the state of things at the time of the action brought") (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)); *Mandell v. Dolloff*, No. 17-cv-01282 (MPS), 2018 WL 3553343, at *4 (D. Conn. July 24, 2018) (concluding that the probate exception applies to plaintiff's claims "for breach of contract, declaratory judgment, and constructive trust, because exercising jurisdiction over these claims and providing the relief [plaintiff] seeks would lead this Court to dispose of property that was under the control of the probate court *when this case was filed*" (emphasis added)). Indeed, after the complaint in this action was filed, plaintiff filed a motion for a preliminary injunction to enjoin defendants from selling, transferring, or otherwise encumbering assets of the decedent's estate. (ECF No. 15.) Thus, for jurisdictional purposes, the Surrogate's Court had control over the assets of the decedent's estate's at the time this lawsuit was filed.

individual capacities, destroyed informal documents that evinced the decedent's relationship with plaintiff as well as the decedent's intentions to bequeath plaintiff her estate.  These claims are considered below.

### III. Failure to State a Claim 12(b)(6)

Even if the probate exception did not apply, the court would still dismiss the complaint because plaintiff failed to state a plausible claim upon which the court may grant relief. Accordingly, for the reasons set forth below, the court dismisses plaintiff's complaint with prejudice.

### A. Breach of Fiduciary Duty (Counts IV-V)

As to plaintiff's breach of fiduciary duty claims (Counts IV-V), plaintiff failed to state a claim upon which relief could be granted.  "To plead a claim of breach of fiduciary duty successfully under New York law, a plaintiff must demonstrate both a fiduciary relationship between the parties and a breach of the duty implied in connection with such a relationship." *Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 26 (S.D.N.Y. 2009).  Even construing all inferences in plaintiff's favor, as this court must when reviewing a motion to dismiss under Rule 12(b)(6), the complaint does not allege plausible facts that establish a breach of the fiduciary relationship between defendants and the decedent's estate.

33

Specifically, plaintiff's assertion that defendant
Charles Kornegay breached his fiduciary duty as administrator of
Doris Dickinson's estate" by committing "myriad acts of bad
faith" is implausible and contradicted by other documents
incorporated into the complaint. *See Brown v. New York City
Hous. Auth.*, No. 05-cv-10332 (VM), 2006 WL 1378599, at *1
(S.D.N.Y. May 17, 2006) ("[W]here allegations set out in the
complaint are contradicted by other matters asserted or by
materials attached to or incorporated by reference in the
complaint, the Court is not obliged to credit the allegations in
the complaint."); *Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131,
140 (E.D.N.Y. 2015).

On September 24, 2019, the Surrogate's Court's issued
an order, directing the Public Administrator to inspect
decedent's apartment to ascertain if the decedent had a last
will and testament and take an inventory. (*See* ECF No. 21-2,
Exhibit C, Order, Sept. 24, 2019, Case No. 2019-3698/A, Surr.
Ct. King's Cty.)  Ms. Peggy Kornegay attests that she
accompanied individuals from the Public Administrator's Office
to search Ms. Dickinson's apartment and she did not discover a
will by the decedent. (*See* P. Kornegay Answer.)  Although
plaintiff asserts that in late November 2019, defendants entered
Ms. Dickinson's apartment and unlawfully shredded documents
taken from the apartment, the Surrogate's Court's records show

34

that defendant Charles Kornegay was officially appointed administrator of the decedent's estate, without opposition, on November 8, 2019.  (*See* Decree Appointing Administrator, Nov. 8, 2019, Case No. 2019-3698/A, Surr. Ct. King's Cty.)  Furthermore, on November 12, 2019, the Surrogate's Court issued Letters of Administration to Charles Kornegay, qualifying him as the administrator of the estate of Doris Dickinson.  (*See* ECF No. 21, Ex. B, Certificate of Appointment of Administrator.)  Thus, any action defendant Charles Kornegay took in "late" November 2019, as alleged by plaintiff, constituted official action by the administrator authorized by the Surrogate's Court that defendant Charles Kornegay took in his official capacity as the administrator of the estate.

For these reasons, any fiduciary relationship that existed between defendants and the decedent's estate was approved by the Surrogate's Court.  As discussed in Ms. Peggy Kornegay's affidavit in the prior action, pursuant to a September 24, 2019 court order, the Public Administrator conducted a search of Ms. Dickinson's apartment and the decedent's will was not found.  (*See* P. Kornegay Answer at 1.)  Thus, as plaintiff concedes, Ms. Dickinson died intestate and Letters of Administration were properly issued to her brother, defendant Charles Kornegay, as prescribed by New York law.  *See* N.Y. Surr. Ct. Proc. Act Law § 1001(1) (establishing order of

priority of intestate descendants who may be eligible and
qualify for letters of administration); *Matter of Piotrowski*, 89
N.Y.S.3d 852, 854 (N.Y. Sur. Ct. Rockland Cty. 2018) (explaining
that letters of administration should be issued to persons who
are distributees of an intestate decedent, and who are eligible
and qualify).  As the official administrator of the estate,
defendant Charles Kornegay did not violate his fiduciary duty by
entering the decedent's apartment and shredding documents during
the course of administering the decedent's estate after a search
by the Public Administrator did not locate a will by the
decedent.  Nor did defendant violate a fiduciary duty by
refusing to distribute assets to plaintiff, in the absence of
documentation providing plaintiff the right to the estate's
assets.

Most importantly, plaintiff's disagreements with the
administration of Ms. Dickinson's estate should have and could
have been raised before the Surrogate's Court.  The public
records from the Surrogate's Court confirm that plaintiff did
not oppose the issuance of Letters of Administration to
defendant Charles Kornegay, even though plaintiff has asserted
that he was aware of the state court probate proceedings.  (*See*
Decree Appointing Administrator, Nov. 8, 2019, Case No. 2019-
3698/A, Surr. Ct. Kings Cty.)  The Second Circuit has explained
that the New York Surrogate's Courts:

> [E]xercise full and complete general
> jurisdiction in law and in equity to
> administer justice in all matters relating
> to estates and the affairs of decedents, and
> upon the return of any process to try and
> determine all questions, legal or equitable,
> arising between any or all of the parties to
> any action or proceeding

*Moser v. Pollin*, 294 F.3d 335, 345 (2d Cir. 2002) (citing N.Y. Surr. Ct. Proc. Act Law § 201(3)).  Thus, although he was aware of the state court proceedings, plaintiff did not seek relief from the state courts, which can review claims similar to those alleged in this federal lawsuit.  *See In re Beharrie*, 924 N.Y.S.2d 451, 452 (2d Dep't 2011) (reviewing appeal from motion to revoke letters of administration issued by the Surrogate's Court); *In re Est. of Gulbrandsen*, 816 N.Y.S.2d 695, 2006 WL 887737 (N.Y. Sur. Ct. Dutchess Cty. 2006) (considering opposition to issuance of preliminary letters testamentary to "best friend" of the executrix of the estate); *cf. In re Dunham's Will*, 150 N.Y.S. 692, 693 (1st Dep't 1914) (considering allegations that a probated will was obtained by undue influence and that a prior will was destroyed).

Instead of filing his objections in the Surrogate's Court, plaintiff filed an action in federal court seeking, among other things, a preliminary injunction to halt "all proceedings brought against the estate of Doris Dickinson" and a declaratory judgment declaring that plaintiff is "the rightful beneficiary

of Doris Dickinson's estate." (*See* Case No. 20-cv-1050, ECF No. 1, Complaint ¶¶ 116-17.)  As discussed above, however, by failing to participate in the Surrogate's Court's proceedings and filing multiple lawsuits before the federal courts, plaintiff has attempted to circumvent the Surrogate's Court's rulings and unlawfully reach assets within the decedent's estate in violation of the probate exception.  The Surrogate's Court decreed that defendant Charles Kornegay serve as the official administrator of the estate and issued Letters of Administration to the defendant. (*See* Decree Appointing Administrator, Nov. 8, 2019, Case No. 2019-3698/A, Surr. Ct. King's Cty.)  Accordingly, because plaintiff has established no legal right to the assets in decedent's estate, defendant Charles Kornegay did not breach a fiduciary duty owed to the decedent's estate and defendant Irene Kornegay also did not aid and abet any breach of fiduciary duty.  For these reasons, plaintiff's breach of fiduciary duty claims are contradicted by the record and fail to state plausible claims for relief.

      B. Conversion (Count VI)

      As discussed above, under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *DeVito v. Neiman*, No. 19-cv-5099 (ARR) (RML), 2021 WL 2910195, at *2 (E.D.N.Y. July 9, 2021).  "Where

one is rightfully in possession of property, one's continued custody of the property and refusal to deliver it on demand of the owner until the owner proves his or her right to it does not constitute a conversion." *Coughlan v. Jachney*, 473 F. Supp. 3d 166, 201 (E.D.N.Y. 2020) (quoting *Green Complex, Inc. v. Smith*, 968 N.Y.S.2d 128, 131 (2d Dep't 2013)).  For the reasons previously discussed, defendants are "rightfully in possession" of the property of the decedent's estate and plaintiff cannot sustain an action for conversion until he proves his right of ownership over the property.  *Coughlan*, 473 F. Supp. 3d at 201. Because plaintiff has not set forth any plausible factual allegations indicating ownership of property in the estate and in light of the Surrogate's Court's official rulings, the court concludes that plaintiff's conversion claim fails to state a claim upon which relief can be granted.

      C. Unjust Enrichment, Quantum Meruit, and Indebitatus Assumpsit (Counts VII-IX)

Under New York law, quantum meruit and unjust enrichment claims may be considered together as a "single quasi contract claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (citation omitted); *see also Napoli v. 243 Glen Cove Ave. Grimaldi, Inc.*, 397 F. Supp. 3d 249, 272 (E.D.N.Y. 2019) (finding New York law allows "[c]laims for unjust enrichment and

quantum meruit [to] . . . be analyzed as a single quasi-contract claim").  A claim of money had and received also "sounds in quasi contract."  *Rocks & Jeans, Inc. v. Lakeview Auto Sales & Serv., Inc.*, 584 N.Y.S.2d 169, 170 (1st Dep't 1992).  Such claims "[a]re not separate causes of action under New York law, but are instead conceptualized as different facets of a single quasi contract cause of action and should be treated as such." *DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*, No. 10-cv-1341, 2012 WL 748760, at *9 n.12 (E.D.N.Y. Mar. 7, 2012).

New York's General Obligations Law § 5-701(a)(10) (the "Statute of Frauds") adds an additional layer to the allegations and proof a plaintiff must offer to pursue a claim either in quantum meruit or for unjust enrichment.  By its plain language, the requirement in the Statute of Frauds that every "agreement, promise or undertaking" be in writing, or else it is void, applies equally "to a contract *implied in fact or in law* to pay reasonable compensation."  N.Y. Gen. Oblig. Law § 5-701(a)(10) (emphasis added); *see Morgenweck v. Vision Cap. Advisors, LLC*, 410 F. App'x 400, 402 n.1 (2d Cir. 2011) (summary order) ("It is well settled that under New York law a plaintiff may not escape the Statute of Frauds by attaching the label 'quantum meruit' or 'unjust enrichment' or 'promissory estoppel' to the underlying contract claim." (citing cases)); *Alkholi v. Macklowe*, No. 20-1961-CV, 2021 WL 1731814, at *3 (2d Cir. May 3, 2021) (The

"Statute [of Frauds] clearly applies as a defense to claims for unjust enrichment and quantum meruit.").

Here, plaintiff asserts that he is entitled to be "compensated" from the decedent's estate due to the years of services he rendered to Ms. Dickinson during her lifetime. (Compl. ¶¶ 99, 109.)  For relief, plaintiff seeks "pecuniary compensation and pecuniary damages from the estate of Doris Dickinson, along with equitable damages based on his quantum meruit recovery claim against Mrs. Dickinson's estate."  (*Id.* ¶ 117.)

Although not expressly identified in plaintiff's complaint, construing plaintiff's pleadings liberally, even assuming plaintiff sufficiently alleged the elements of a claim for breach of an oral contract under New York law, plaintiff's breach of contract claim must be dismissed for noncompliance with New York's statute of frauds as it relates to real property transactions.  *See* N.Y. Gen. Oblig. Law § 5-703(1); (*see also* Pl. Mem. at 38 (discussing breach of contract claim)).

Any purported oral contract alleged by plaintiff is covered by the statute of frauds because it relates to the real property Ms. Dickinson owned in New York.  (*See* Compl. ¶ 62 (alleging that Ms. Dickinson "wanted all of her real estate holdings, the funds in her bank accounts, and every other assets that she owned to go directly to Plaintiff").)  Under New York's

statute of frauds, oral contracts relating to real property that are unaccompanied by a writing memorializing the essential terms of the agreement are void. *See, e.g.*, *Roulley v. Inex Co.*, 677 F.2d 14, 15 (2d Cir. 1982) (statute of frauds applied to loan secured by deed of trust on real estate); *Hanson v. Hanson*, No. 18-cv-695 (KPF), 2019 WL 935127, at *6 (S.D.N.Y. Feb. 26, 2019) (granting motion to dismiss on New York statute of frauds grounds where purported contract involving an interest in real property was not memorialized in a writing).

Under New York law, "[w]here the Statute of Frauds precludes enforcement of an oral agreement, '[a] party may not circumvent the Statute of Frauds by repleading an already barred breach of contract claim as a claim for unjust enrichment.'" *Speedfit LLC v. Woodway USA, Inc.*, 432 F. Supp. 3d 183, 217 (E.D.N.Y. 2020) (quoting *Almeciga v. Ctr. for Investigative Reporting*, 185 F. Supp. 3d 401, 412-13 (S.D.N.Y. 2016)). Here, as discussed above, plaintiff alleges several quasi-contract claims in an attempt to enforce a purported oral contract between plaintiff and Ms. Dickinson during her lifetime; thus, the status of fraud applies and bars plaintiff's contract and quasi-contract claims. (*See* Compl ¶ 111 (alleging that plaintiff is entitled to "relief in the form of *indebitatus assumpsit* against the estate of Doris Dickinson; relief based on a breach of contract against the estate of Doris Dickinson").)

Accordingly, plaintiff's claims based on theories of quasi-contract similarly fail to plausibly state a claim for relief and must be dismissed.

To the extent that plaintiff seeks to be compensated for services rendered to Ms. Dickinson notwithstanding his request for the decedent's real property assets, New York's statute of frauds also requires an agreement to be in writing if "[b]y its terms" the "performance of which is not to be completed before the end of a lifetime."  N.Y. Gen. Oblig. Law § 5-701(a)(1).  New York courts have repeatedly denied similar contract claims where a plaintiff has demanded compensation for past performances rendered to a decedent based on an oral contract.  *See, e.g.*, *Matter of Est. of Barr*, 676 N.Y.S.2d 323, 324 (3d Dep't 1998) (concluding that the statute of frauds "precludes the assertion of petitioners' entitlement to compensation based upon an oral agreement to provide services to decedent to be paid for after death"); *Matter of Kittay*, 500 N.Y.S.2d 6, 7 (2d Dep't 1986) (rejecting petitioner's claim against the estate for compensation for services as "the decedent's social and traveling companion and confidante" as precluded by the statute of frauds); *In re Albin's Est.*, 230 N.Y.S.2d 750, 754 (N.Y. Sur. Ct. Suffolk Cty. 1962) (concluding that oral contract for services as a housekeeper was barred by the Statute of Frauds because "any payments [] to be made to

[plaintiff] for the alleged services, . . . were not to be made until after decedent's death").

Here, plaintiff concedes that "there was no written contract that memorialized" the alleged oral contract to compensate him for services rendered. (Compl. ¶ 64.) Further, plaintiff alleges that in October 2018, Ms. Dickinson "decided to act on her commitment to compensate Plaintiff" and allegedly dictated to plaintiff that "*in the event of her death*, she wanted all of her real estate holdings, the funds in her bank accounts, and every other assets that she owned to go directly to Plaintiff." (Compl. ¶ 62 (emphasis added).) Thus, by its very terms, any alleged contract existing between Ms. Dickinson and plaintiff fell within the scope of the Statute of Frauds because the performance of such contract was not possible "before the end of a lifetime." N.Y. Gen. Oblig. Law § 5-701(a)(1); *see Dreher v. Levy*, 415 N.Y.S.2d 658, 659-60 (2d Dep't 1979) (The Statute of Frauds "makes void and unenforceable any oral agreement which, in the absence of some written memorandum, may not be fully performed before the end of a lifetime."). In any event, plaintiff's claim for compensation for services is also contradictory to the record before the court. (*See* P. Kornegay Answer (attesting that plaintiff "was compensated for everything he has done for [the decedent] with monies she kept in the home").) For these reasons, any claim

based on an alleged contract between plaintiff and Ms. Dickinson for compensation for services is also barred by New York's statute of frauds.

        D. <u>Fraudulent Misrepresentation and Fraudulent Concealment (Counts I-II)</u>

Plaintiff's remaining fraud and tort claims in Counts I-III are based on allegedly improper conduct by defendants in accessing Ms. Dickinson's apartment and willfully destroying documents such as ledgers, handwritten notes, record books, legal documents, and the aforementioned informal document signed by decedent in October 2018 which purportedly demonstrated the decedent's intention to leave her estate to plaintiff. (Compl. ¶¶ 95-96.) Moreover, although plaintiff fails to identify a particular false statement or omission, plaintiff's complaint, liberally construed, appears to also assert that defendants misrepresented defendants' right to the decedent's estate to the Surrogate's Court. (*See* Compl. ¶¶ 102, 108.)

The heightened pleading standards under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") apply to plaintiff's fraud claims. *See Tellabs*, 551 U.S. at 319 (determining that Rule 9(b) applies to all averments of fraud or mistake; it requires that the circumstances constituting fraud be stated with particularity) (internal quotations omitted). "Failure to plead facts sufficient to meet the heightened standards of Rule 9(b)

can result in dismissal, even under the more liberal reading of a *pro se's* submission." *Skarzynska v. New York Bus. Dev. Corp.*, No. 15-cv-00140 (DLI)(VMS), 2017 WL 1247882, at *8 (E.D.N.Y. Mar. 31, 2017).  To satisfy the Rule 9(b) standard, a plaintiff must "set forth the who, what, when, where and how of the alleged fraud." *U.S. ex rel. Polansky v. Pfizer, Inc.*, No. 04-cv-0704 (ERK), 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009). Under New York law, a claim for fraudulent concealment "requires the same showing as [ ] that for fraudulent misrepresentation, with the additional requirement that the defendant had a duty to disclose material information." *Fed. Deposit Ins. Corp. v. Murex LLC*, 500 F. Supp. 3d 76, 116 (S.D.N.Y. 2020) (quoting *Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008)).

Here, plaintiff asserts that defendants intentionally misrepresented defendants' right to the decedent's estate to the Surrogate's Court by shredding documents which demonstrated the decedent's intent to give the assets of her estate to plaintiff. As a threshold matter, it appears that plaintiff has sufficiently pleaded facts indicating the "who, what, when, and where" of the alleged fraud occurred.  Specifically, plaintiff alleges that defendants Charles and Irene Kornegay were seen by multiple witnesses destroying relevant documents in late November 2019 in the decedent's former apartment on 737

Sheffield Avenue by conducting an unlawful search of the premises, carrying papers to a shredding vehicle outside, and shredding those papers.  (Compl. ¶¶ 95-96.)

Nonetheless, "how" defendants' actions -- conducted while defendant Charles Kornegay was the official administrator of the estate -- constitute fraud is unclear to the court. "Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370 (N.Y. 1996)).

Plaintiff argues that defendants' allegedly material and knowingly false misrepresentation was intended to induce reliance on the part of the Surrogate's Court in naming Charles Kornegay the administrator of the estate.  First, plaintiff's allegations are contradicted by evidence of which the court may take judicial notice, that defendants did not access the decedent's apartment until after defendant Charles Kornegay was appointed as the administrator of the estate and issued Letters of Administration on November 12, 2019.  (*See* Compl. ¶ 92 (alleging fraudulent conduct in "late November of 2019"); Decree

Appointing Administrator, Nov. 8, 2019, Case No. 2019-3698/A, Surr. Ct. King's Cty; ECF No. 21, Ex. B, Certificate of Appointment of Administrator.)

Assuming as true the allegation that defendants knowingly and falsely shredded material documents, plaintiff does not plausibly allege that the Surrogate's Court relied upon misrepresentations by the defendants when appointing Charles Kornegay as administrator of the estate. Public records from the Surrogate's Court and the pleadings show that the defendants' actions in accessing Ms. Dickinson's apartment occurred in "late" November (Compl. ¶ 92), only after defendant Charles Kornegay was officially appointed as administrator of the estate on November 8, 2019. Indeed, before defendant Charles Kornegay was appointed as administrator on November 8, 2019, Ms. Peggy Kornegay attests that she accompanied individuals from the Public Administrator's Office, pursuant to a September 24, 2019 order, to search Ms. Dickinson's apartment and she did not discover the decedent's will. (*See* P. Kornegay Answer.) Accordingly, plaintiff's claim that defendants knowingly and falsely represented their right to Ms. Dickinson's estate by destroying documents is contradicted by the public records from the Surrogate's Court and the pleadings, of which the court takes judicial notice, showing that the Surrogate's

Court appointed Charles Kornegay as administrator before defendants allegedly destroyed any documents.

Second, plaintiff fails to plausibly allege the reliance element in his fraud claims.  To properly state a claim of fraud under New York law, the reliance element must be one "upon which the *plaintiff* reasonably relied."  *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (emphasis added).  In other words, it is the plaintiff that must have reasonably relied on the alleged omission or misrepresentation, not a third party.  The Second Circuit and the New York Court of Appeals have explained that "a plaintiff does not establish the reliance element of fraud for purposes of . . . New York law by showing only that a third party relied on a defendant's false statements."  *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo*, 148 F.3d 194, 196 (2d Cir. 1998); *Pasternack v. Lab'y Corp. of Am. Holdings*, 59 N.E.3d 485, 491 (N.Y. 2016) ("[T]hird-party reliance does not satisfy the reliance element of a fraud claim.").

Here, although plaintiff appears to argue that the Surrogate's Court relied on defendants' misrepresentation regarding defendants' right to Ms. Dickinson's estate (*see* Compl. ¶¶ 102, 108), plaintiff has not plausibly alleged that he relied on the defendants' omission or destruction of the documents

conveying Ms. Dickinson's testamentary intent.  Nor can plaintiff plausibly allege reliance on defendants' conduct because an essential allegation to plaintiff's complaint is his prior knowledge that informal documents reflecting Ms. Dickinson's testamentary intent existed.  Plaintiff cannot now plausibly argue that he relied on defendants' omission of critical documents in declining to challenge the Surrogate's Court's rulings, while simultaneously alleging that he retained prior knowledge of the existence of these documents. Accordingly, for the reasons stated above, because plaintiff failed to plausibly state a claim for fraud for which relief can be granted under New York law, this court grants defendants' motion to dismiss as to Counts I-II.

E. <u>Tortious Interference (Count III)</u>

Plaintiff alleges that defendants are "also liable to Plaintiff for their adverse and injurious interference with the contractual arrangement that existed between Plaintiff and Mrs. Dickinson."  (Compl. ¶ 107.)  Under New York law, the elements of tortious interference with contract are (1) "the existence of a valid contract between the plaintiff and a third party"; (2) the "defendant's knowledge of the contract"; (3) the "defendant's intentional procurement of the third-party's breach of the contract without justification"; (4) "actual breach of the contract"; and (5) "damages resulting therefrom."  *Kirch v.*

*Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996)).  Moreover, the complaint must allege that the defendant's actions were the "but for" cause of the alleged breach.  *Influx Cap., LLC v. Pershin*, 131 N.Y.S.3d 712, 715 (2d Dep't 2020).

        Plaintiff's tortious interference claim fails because, as discussed above, no valid contract exists between plaintiff and Ms. Dickinson because the alleged oral contract failed to comply with New York's Statute of Frauds.  (*See supra* Discussion III.C.)  Even assuming plaintiff plausibly alleged an oral contract between plaintiff and the decedent, the complaint does not plausibly allege defendants procured the breach, that defendants did so intentionally, and that their actions were the "but for" cause of the alleged breach.  Indeed, contrary to plaintiff's tortious interference claim, plaintiff alleges that defendants had no contact with the decedent before her death and that he served the decedent continually until her death. (Compl. ¶ 36 ("[I]n all the years that Plaintiff has known Mrs. Dickinson and the amount of time that he has spent with her and in her home, he has never heard or witnessed her receiving a telephone call from anyone claiming to be her sibling").)  Thus, it is implausible that plaintiff can also allege that defendants intentionally procured a breach of contract by Ms. Dickinson

during her lifetime when defendants had no contact with Ms.
Dickinson.  Moreover, even if Ms. Dickinson breached her oral
contract with plaintiff, it is implausible that defendants were
the "but for" cause of the alleged breach, when defendants did
not appear until after Ms. Dickinson's death.  To the extent
that plaintiff's claim alleges that defendant Charles Kornegay
has "tortiously interfered" with a contract between plaintiff
and the decedent after the decedent's death by not compensating
plaintiff for services he provided the decedent, this claim is
duplicative of plaintiff's contract and quasi-contract claims
discussed and dismissed above.  *See Wiederman v. Spark Energy,
Inc.*, No. 19-cv-4564 (PGG), 2020 WL 1862319, at *6 (S.D.N.Y.
Apr. 14, 2020) ("Tortious interference claims that are
duplicative of contract claims are precluded."); *cf.
Alterseekers, Inc. v. BrandForce SF, LLC*, No. 12-cv-5392 (GRB),
2015 WL 5719759, at *12 (E.D.N.Y. Sept. 29, 2015) (dismissing
unjust enrichment claim as duplicative of tortious interference
claim).  For these reasons, the court concludes that plaintiff
failed to state a claim for tortious interference for which
relief can be granted under New York law and grants defendants'
motion to dismiss Count III.

## IV.  Leave to Amend

Although plaintiff has not formally requested leave to
amend his complaint (*see* Pl. Mem. at 32 n. 32), the court has

considered whether plaintiff should be given an opportunity to replead.  The Second Circuit has emphasized that:

> A pro se complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotations and citations omitted).  Under Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a).  Even under this liberal standard, however, leave need not be granted if an amended would be futile.  This court finds that any attempt to amend the pleading in this case would be futile.

As discussed in detail *supra*, this court lacks subject matter jurisdiction over this case and plaintiff's claims also fail to state a claim upon which relief can be granted under Rule 12(b)(6).  Accordingly, it is clear that no amendments can cure the jurisdictional (and other) defects in this case, and any attempt to replead would be futile.  *See Cuoco*, 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *see also Hayden v. Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would

survive dismissal, opportunity to replead is rightfully denied").

Moreover, plaintiff declined to amend his operative complaint when offered an opportunity to do so in October 2020 (*see* Minute Entry 10/1/2020) and has already brought one unsuccessful federal lawsuit involving substantially similar claims and allegations. *See McKie v. Est. of Dickinson*, No. 20-cv-1050 (KAM), 2020 WL 2797243, at *3 (E.D.N.Y. May 29, 2020) (dismissing plaintiff's first complaint for lack of subject matter jurisdiction). Finally, plaintiff's proposed amendment to add a quasi-contract claim would be futile for the reasons stated above. (*See* Pl. Mem. at 32 n. 32.) Similarly, plaintiff's proposed claim for accounting would be futile because "it is well-established that to sustain an equitable action for accounting under New York law, a plaintiff must show either a fiduciary or confidential relationship with the defendant." *Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 339 (E.D.N.Y. 2016). It is undisputed that plaintiff had neither a fiduciary nor confidential relationship with the defendants and a claim for accounting would therefore be futile. For these reasons, the court declines to grant plaintiff leave to amend his complaint.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is GRANTED in its entirety.  Plaintiff's complaint is dismissed without prejudice for lack of subject matter jurisdiction.  Plaintiff's claims as to Counts IV-IX are dismissed without prejudice for lack of subject matter jurisdiction.  Further, plaintiff's complaint is dismissed in its entirety with prejudice for failure to state a claim upon which relief may be granted.  Plaintiff's motion for injunctive relief and to expedite disposition of defendants' motion to dismiss are denied and terminated as moot.  The Clerk of the Court is respectfully directed to enter judgment in favor of defendants, mail a copy of this Memorandum & Order and the judgment to plaintiff, and note service on the docket.

SO ORDERED.


_____/s/_____

KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York


Dated: August 2, 2021
       Brooklyn, New York